# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LENA I. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-160-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Lena I. Taylor requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 5, 1944 and was sixty-four years old at the time of the administrative hearing (Tr. 22). She has a bachelor's degree and has worked as a janitor, production line worker, poultry hanger, telephone clerk, and caseworker (Tr. 31). The claimant alleges she has been unable to work since May 12, 2006 (though this was amended to July 31, 2006 at the administrative hearing) because of rheumatoid arthritis, osteoarthritis, osteoporosis, uncontrollable diarrhea, hypothyroidism, fibromyalgia, pain, incontinence, sleeplessness, fatigue and exhaustion (Tr. 112). The claimant also alleges mental impairments of dysthemia and panic disorder.

## Procedural History

The claimant applied on July 6, 2006 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Lantz McClain held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 14, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift, carry, push, or

pull 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit for six hours in an eight-hour workday (Tr. 11). The ALJ concluded that the claimant was not disabled because she could return to her past work as a telephone clerk and caseworker (Tr. 14).

## Review

The claimant contends that the ALJ erred: (i) by improperly analyzing her mental impairments; (ii) by failing to properly evaluate the opinion of her treating physician, Dr. James R. Brixey, D.O.; (iii) by failing to properly analyze her credibility; and (iv) by finding that she could return to her past work. The Court finds that the ALJ failed to properly evaluate Dr. Brixey's opinion, and the decision of the Commissioner must therefore be reversed.

Medical opinions from the claimant's treating physician are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527(d). *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the

kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so." *Id*. at 1301. In summary, it must be "clear to any subsequent reviewers the weight [the ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

Dr. Brixey served as the claimant's primary care physician beginning in 2002. In 2003, he referred her to Dr. Timothy L. Huettner, M.D. for complaints of osteoarthritis (Tr. 172). During her initial visit with Dr. Huettner on March 28, 2003, the claimant related that she had experienced "significant joint pain for at least [six] years" and that she has weakness in her hands, which causes her to drop things, shoulders, hips, and the lower spine (Tr. 168). The following month, Dr. Huettner noted that claimant was suffering inflammatory arthritis, which he was concerned was the beginnings of rheumatoid arthritis (Tr. 167). In November 2003, the notes indicate that claimant did, indeed, test positive for rheumatoid arthritis (Tr. 161). Throughout her visits with Dr. Huettner, claimant often complained of morning stiffness (157-60, 164-67), sometimes lasting as long as three hours (Tr. 166), and her generalized complaints, *i. e.*, that she was

feeling worse, continued from May 2004 through to the end of Dr. Huettner's treatment notes in February 2005 (Tr. 154-59).

Dr. Brixey referred the claimant to rheumatologist Dr. Alan L. Martin, M.D. in 2005 (Tr. 244). Dr. Martin noted that the claimant was complaining of "diffuse pain . . . consistent with fibromyalgia and arthritis" and that claimant's depression symptoms were "influencing her pain complaints" (Tr. 244). In an April 2006 examination, Dr. Martin found that claimant was experiencing tenderness in the joint and non-joint areas of the hands, forearms, lateral epicondyles, and upper arms (Tr. 239). These findings were repeated in August 2006 (Tr. 238), December 2006 (Tr. 237), May 2007 (Tr. 236), and September 2007 (Tr. 235).

Dr. Brixey evaluated the claimant's functional limitations in a Residual Functional Capacity to Do Work Related Activities form. He opined that the claimant could sit three to four hours at a time and four to five hours total in a workday, and stand two hours at a time and one to two hours total in a workday, and walk two hours at a time and three to four hours total in a workday (Tr. 250). Dr. Brixey also opined that the claimant could lift twenty-five pounds occasionally and five pounds frequently, and carry twenty pounds occasionally and five pounds frequently (Tr. 250). He further found that the claimant was limited in the use of her hands (Tr. 251), and had postural limitations, *i. e.*, she could bend, squat, climb and reach occasionally but never crawl (Tr. 251). Dr. Brixey added that the claimant would need to miss more than three days of work per month (Tr. 252).

The ALJ discussed the functional limitations imposed by Dr. Brixey in his written decision. Although the ALJ did not indicate the weight he was assigning to Dr. Brixey's

opinions, it is clear he rejected them outright, as he noted they were more restrictive than his assessment of the claimant's RFC (Tr. 13). The ALJ concluded with the following:

> This physician gave no previous restrictions to the claimant. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(Tr. 19). Such analysis by the ALJ of the opinions expressed by Dr. Brixey about the claimant's functional limitations was erroneous for several reasons.

First, it was clearly improper for the ALJ reject Dr. Brixey's opinions based upon his unfounded speculation about the motives for giving them. *See Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.'"), quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original].

Second, the observation that Dr. Brixey's opinions "depart[ed] substantially from the rest of the evidence of record" might have justified refusal to give them controlling weight *if* the ALJ had specified the inconsistent evidence to which he was referring, *see Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300; s*ee also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are."), but even if the ALJ *had* done this, he would nevertheless have been required to evaluate the proper weight to give Dr. Brixey's opinions by applying *all the factors* in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. This was particularly important to do here because the ALJ apparently preferred a state agency physician's opinion over Dr. Brixey's, *i. e.*, he noted his RFC determination was supported by the agency physician (Tr. 13), but failed to explain this preference, *see, e. g., Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr.

Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."); *see also Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995) ("A treating physician's opinion is favored over an opinion offered by a consulting physician."), *citing Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir. 1987), or even to specify the weight he was assigning to either opinion. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1223 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.").

Because the ALJ failed to properly analyze Dr. Brixey's opinions as to the claimant's functional limitations, the decision of the Commissioner must be reversed and the case remanded for further analysis. On remand, if a proper analysis of Dr. Brixey's opinions results in any modifications to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and REMANDED for further proceedings by the ALJ as set forth above.

**DATED** this 30th day of September, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**